UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61003-CIV-SELTZER

### CONSENT CASE

VIRGINIA LITTLE,

        Plaintiff,

vs.

FOSTER WHEELER
CONSTRUCTORS, INC.,

        Defendant.

_____/

### MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

I.    INTRODUCTION

Virginia Little ("Plaintiff") brought a one-count Verified Complaint against her former employer, Foster Wheeler Constructors, Inc. ("Defendant"), under "the Florida Private Sector Whistleblower Act, chapter 448.102(3) for terminating [her] after she complained to human resources about sexual harassment and drug abuse in the workplace." Complaint ¶ 3 (DE 1).[1] This cause is now before the Court upon Plaintiff's Motion for Summary Judgment (DE 40-1) and Defendant's Motion for Summary Judgment (DE 44), having been referred to the undersigned pursuant to the consent of the parties (DE 55). For the reasons set forth below, it is hereby ORDERED that Plaintiff's Motion (DE 40-1) is DENIED and that Defendant's Motion (DE 44) is GRANTED.

_____

[1] On July 9, 2009, Defendant filed a Notice of Removal, invoking this Court's diversity jurisdiction (DE 1).

## II.    FACTUAL BACKGROUND[2]

### A.    Defendant's Hiring Practices

Defendant is a construction company.  When it commences a project, its site superintendents and foremen meet to determine the hiring logistics.  Ivey Depo. 12:11-13:4; Laird Depo. 19:1-12; Laird Decl. ¶¶ 1-3.  During this meeting, the superintendent decides on the number of workers required, and a list of prospective workers is circulated. Laird Depo. 19:1-12.  To be placed on the list, a prospective worker must call and speak to the office assistant, to one of the foremen, or to an individual already on the job who, in turn, submits the prospective worker's name to the office assistant.  W. Lopez Depo. 12:2-21; D. Lopez Depo. 8:25-9:11 and 11:21-12:17; Laird Decl. ¶3.  The foremen then examine the list and select a certain number of workers for the pending project.  Because hiring decisions are specific to the needs of each project, Defendant does not guarantee employment.  Laird Decl. ¶3.  Furthermore, even after being employed to work a particular project, a worker is "laid off" when that project is completed, unless and until re-called to the next job.  Laird Decl. ¶2.  To be re-called, a worker must again contact the office assistant or a foreman to have his or her name placed back onto the list.  D. Lopez Depo. 12:1-17; Ratliff Depo. 7:19-8:24.  If re-called by Defendant, either an office assistant or a foreman contacts the worker with information about the starting date and site location.  Id.

### B.    Plaintiff's First Job with Defendant

In December 2007, Plaintiff was first hired by Defendant as a "welder's helper" on

_____

[2] The undersigned herein cites to particular deposition pages, declaration paragraphs, and telephone conversation notes.  These documents can be found in the record as attachments to Docket Entry 40 or Docket Entry 47.

2

a Port Everglades job site. Plaintiff's Depo. 26: 21-23 and 32:1. Plaintiff had learned of the job through her son, Alex Lopez. Plaintiff's Depo. 28:10-11. Plaintiff, however, worked for only five days before being laid off. Plaintiff's Depo. 39-40:23. Also in December 2007, Plaintiff learned of a relationship between her daughter, Florence "Fay" Roberson, who was employed by Defendant, and the job site superintendent, David Laird. Plaintiff's Depo. 37:6-18.

### C. Roberson's Relationship with Laird

Roberson had met Laird through her sister, Wynette Lopez, who worked with Laird as a welder. After Laird and Roberson began working together, their relationship developed into a sexual one; Roberson made clear that she did not feel pressured to enter into the relationship, and she described Laird as her "lover." Roberson Depo. 6:18-8:1 and 37:11-17. Although problems arose during the course of their relationship, Laird never threatened Roberson's job if she did not continue to be involved with him sexually. He did, however, threaten her job if she did not work as required. Roberson Depo. 8:10-9:2 and 37:21-24. By way of example, in January 2007, Roberson and Laird argued, with Laird telling Roberson, "If you want to keep your job, you need to do your job." Roberson Depo. 37:23-38:12. When Roberson questioned Laird as to the meaning of this statement, Laird responded (to Roberson): "Exactly what I said. You can keep your job as long as you do your job." Roberson Depo. 38:13-18. Roberson then packed her belongings and went home for a few days; she was "sick and tired" of Laird talking to women that he had met on an internet dating site. Roberson Depo. 38:22-40:6. Ultimately, however, Laird and Roberson "discussed everything and got back together," and they continued what had become an on-again/off-again relationship. Roberson Dep. 39:5-8 and 40:12-16.

3

According to Roberson, "when we were split up on the job, everybody paid hell," whether they were related to Roberson or not; Roberson's co-workers would even ask her to speak to Laird in an effort to placate him. Roberson Depo. 41:11-42:15.

### D.    Plaintiff's Second Job with Defendant

In February 2008, Plaintiff was again hired to work for Defendant. Plaintiff's Depo. 41:11-13. Roberson, who had assisted Plaintiff in obtaining the job, informed Plaintiff that she would be working in the tool room and that she "would have a job probably for eight months." Plaintiff's Depo. 41:14- 42:1 and 43:22-44:4. On February 11, 2008, Plaintiff commenced her work for Defendant as a tool room attendant. Plaintiff's Depo. 46:13-15 and 49:5-11. Plaintiff knew that Roberson and Laird were still involved in a relationship, but during this time she also learned of Roberson's drug use. Plaintiff's Depo. 57:22-58:1 and 112:9-12. On one occasion, after returning from seeing Laird, Roberson left drugs on the counter of the room Plaintiff and Roberson shared; Plaintiff flushed the drugs down the toilet. Plaintiff's Depo. 91:18-21.    Plaintiff believed that Laird was the cause of Roberson's drug abuse and that he was also using drugs. Plaintiff's Depo. 91-94. Other than Roberson, however, Plaintiff never saw Laird or any other employee of Defendant in possession of drugs. Plaintiff's Depo. 92:5-7, 93: 21-25, and 94:18-20.    Nonetheless, Plaintiff was convinced that Laird was using drugs in light of comments that she heard him utter. Plaintiff's Depo. 91:10-25 and 92:8-93:13.

Plaintiff did not speak to Laird about his relationship with Roberson, and Plaintiff even told Roberson that, "[i]t is none of my business what you do . . . . You make your own decisions. I don't like it but, you know, I can't make your decisions." Roberson Depo. 13:17-14:2; Plaintiff's Depo. 38:3-11. Plaintiff, however, suspected that Laird was

4

controlling Roberson. Plaintiff's Depo. 100:3-25.

According to Plaintiff, on two occasions Roberson requested that Plaintiff provide her with a urine sample to enable Roberson and others to pass a company mandated drug test. Plaintiff's Depo. 76:11-25. Roberson had reportedly told Plaintiff that "everybody works together here and help[s] each other . . . . If you want a job, we all work together." Plaintiff's Depo. 77:6-9. Plaintiff complied with the request. Plaintiff's Depo 78:10-16. Roberson later told Plaintiff that she had given the urine sample to Laird, to foreman Glen Hahn, and to foreman Tommy Ray. Plaintiff's Depo. 80-81:1. Plaintiff subsequently saw Laird warm a small container containing a yellow-tinged liquid in the tool room microwave. Plaintiff's Depo. 81:8-20. When Plaintiff asked Roberson what was in the container, Roberson responded that it was the urine that Plaintiff had previously provided. Plaintiff's Depo. 82:20-24.

Throughout March 2008, Roberson missed several days of work. Plaintiff's Depo. 119:7-13; Laird Decl. ¶8. Plaintiff discussed Roberson's absences with Laird and was informed that Laird would have to terminate Roberson if she did not start coming to work. Plaintiff's Depo. 120:19-122:10. After Roberson did not appear for work on March 29, 2008, Plaintiff returned (from work) to their hotel room and saw Roberson; an argument ensued between the two. Plaintiff's Depo 124:12-18. After the argument, Plaintiff spoke to her husband and to her other daughter, Wynette Lopez. Plaintiff's Depo. 124: 19-20 and 125:5-7. Plaintiff was upset and crying; she did not know what to do about Roberson's behavior. Plaintiff's Depo 125:3-12. Upon learning of the argument, Wynette Lopez contacted Teddy Ivey, a craft supervisor for Defendant, to "see if he [could] get the situation under control". W. Lopez Depo. 17:1-20; Plaintiff's Depo. 128:2-5. Ivey and

5

Wynette Lopez both spoke to Laird concerning the hostilities between Roberson and Plaintiff.  W. Lopez Depo 17:19-18:14; Laird Decl. ¶11.   Laird responded (to Wynette Lopez) that Plaintiff may want to go "home for a few days." W. Lopez Depo 18:10:13. When Ivey arrived at the hotel, Plaintiff was visibly upset; Ivey told Plaintiff to "take a couple of days off work [and] let everything cool down."  Plaintiff's Depo. 128:20-130:1:8. Plaintiff too believed this was a good idea and did not object.  Plaintiff's Depo. 131:18-132:6.  The following day – March 30 – Plaintiff and Roberson had another heated dispute. Plaintiff's Depo. 132:19-133:19.  Following the dispute, Ivey went to Plaintiff's hotel room and helped Plaintiff move her belongings into her truck. Plaintiff's Depo. 134:8-23.

Plaintiff departed Ft. Lauderdale on Sunday, March 30, 2008,  with the intention of returning in "a couple days," that is, the following Tuesday or Wednesday.  Plaintiff's Depo. 135:14-136:24.  After speaking to Wynette Lopez and learning that she was planning to return on Wednesday, Plaintiff decided to return with her.  Plaintiff's Depo. 131:17, 142: 8-13, 144:2-5.  Lopez, however, received another employment offer and decided not to return to the job site that week.  W. Lopez Depo. 21:10-25.  Days later, Ivey called Lopez and told her that Plaintiff should not return to the job site that week; the outage on which Plaintiff had been working was ending during the first week of April.  W. Lopez Depo. 22; Laird Decl. ¶12.  Instead, Plaintiff was to return to work the night shift for the Florida Power & Light ("FPL") outage beginning on or about April 28, 2008.  W. Lopez Depo. 22:6-23:5; Laird Decl. ¶¶ 13-15.  Laird had decided to have two individuals work the tool room for the April 28 outage.  Barbara Davis, a long-time employee, was to work the day shift; Plaintiff was to work the night shift.  Laird Depo. 41:19-23; Laird Decl. ¶¶ 13-15.

6

## E. Plaintiff's Call to Human Resources and the Follow-Up Investigation

On April 16, 2008, Plaintiff telephoned Leonard Wallace of Defendant's Human Resources Department. Wallace Depo. 37-38. Plaintiff placed the call to learn why she had not been brought back to work at the Port Everglades job site. Wallace Depo. 38 and 62; Plaintiff's Depo. 161; Lively Decl. ¶2. According to Wallace's contemporaneous notes, Plaintiff also made the following comments during the conversation: (1) "David Laird dates her daughter Faye Roberson"; (2) "Faye attacked her"; (3) she has "peed in cups for Florence Faye and David"; (4) "David wrecked her truck"; (5) "Teddy [Ivey] told her to take some time off"; (6) Barbara Davis "took her place because [Davis] is the drug dealer on the job"; (7) she had "peed for Tommy Ray, Florence and David"; (8) "there are pocket warmers"; (9) "on the 29th Faye came home at 4:00 a.m."; (10) "David was upset and told Vicki S. to fire Faye"; (11) "Faye told [Plaintiff] that she sleeps with David and it is no one else's business"; and (12) "Josh Ratliff is Wynette's son". Wallace April 16, 2010 Telephone Conversation Notes; Plaintiff's Depo. 157:19-161:14. Thereafter, Wallace conveyed this information to Richard Lively, Defendant's Vice President for Human Resources. Lively Depo. 12:3 -13:4; Wallace Depo. 62:13-21.

On April 23, 2008, Plaintiff received a telephone call informing her that the night shift for the upcoming April 2008 outage had been canceled.[3] Plaintiff's Depo. 170:8-21. Plaintiff believes that Laird was responsible for canceling the night shift because he was obsessed with Roberson and wanted to retaliate against Plaintiff for having complained to

---

[3] The parties do not dispute that the night shift was canceled. And Plaintiff conceded that she did not have any evidence suggesting otherwise. Plaintiff's Depo. 171:7-172:12 and 241:14-17.

Defendant's Human Resources Department. Plaintiff's Depo. 176: 1-5.

Wallace began to investigate the reason for Plaintiff not having been re-hired, and Lively began to investigate Plaintiff's allegations of drug testing irregularities. Lively Depo. 13:14-16 and 24:4-25:5; Lively Decl. ¶¶ 3, 4. When Wallace spoke to Laird about Plaintiff's employment, Laird explained that he had initially scheduled Plaintiff to work the night shift for the April 28, 2008 outage; however, the night shift was canceled after FPL reduced the scope of the project. Wallace Depo. 53:14-54:8; Laird Depo. 40:16-23; Laird Decl. ¶¶ 15-17; Lively Decl. ¶9. During this conversation, Wallace only revealed to Laird that Plaintiff had asked about being rehired; Wallace specifically omitted any mention of Plaintiff's other allegations "[b]ecause [he] did not want David [Laird] to know what had been told to [him]." Wallace Depo. 54:9-17.

In response to Plaintiff's allegations of drug testing irregularities, Lively commenced a site-wide surprise drug test at the Port Everglades facility; the tests yielded negative results. Lively Depo. 13:19-14:1 and 28:5-12; Lively Decl. ¶8. Like Wallace, Lively "did not share the information reported by [Plaintiff] to Mr. David Laird or anyone else at the Port Everglades facility." Lively Decl. ¶ 7. Lively explained that, as a general rule, Defendant "does not advise employees when another employee has raised a concern or a complaint"; "company policy [is] to only provide information to individuals on a need to know basis, and then only as much information as is necessary." Lively Decl. ¶ 6. With respect to the reported relationship between Laird and Roberson, Lively did not commence an investigation because Plaintiff's comments had described a consensual relationship between two adults; Defendant "does not prohibit employees from engaging in consensual sexual relationships". Lively Depo. 14:5 - 22; Lively Decl. ¶ 5.

8

Since March 30, 2008, Plaintiff has not worked for Defendant. Although she has attempted to contact Wallace,[4] she has not contacted the office assistant, the job superintendent or any foreman to have her name placed back on the list for re-hiring.[5] Nor has Plaintiff spoken to any of her extended family, many of whom continue to work for Defendant, to ask any of them to place her back on the list for re-hiring. Lively Depo. 37-38; Wallace Depo. 104:5-105:16; Plaintiff's Depo. 200:1-22 and 246:12-247:3; Laird Decl. ¶ 23.

## III.   STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. An issue is "genuine" if a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it must be decided to resolve the substantive claim or defense to which the motion is directed. Id.; Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913 (11th Cir. 1993).

The moving party has the burden to establish the absence of a genuine issue as to any material fact. Adickes v. S.H. Kress and Co., 398 U.S. 144, 157 (1970). Once the movant has satisfied its initial burden, the non-moving party must then go beyond the

---

[4] At his deposition, Wallace testified that recruitment is not customarily one of his duties; rather, it is Defendant's practice that hiring is the "responsibility of the site manager" and is done "at the project site." Wallace Depo. 105:15-22.

[5] Plaintiff did speak to Ivey on or about April 2 or April 3; she did not ask about future employment, but about Barbara Davis's working in the tool room. Plaintiff's Depo. 145:19-146:17.

pleadings to rebut any facts properly presented; it may do so through affidavits or other evidence showing the existence of genuine issues of material fact for trial. Fed. R. Civ. P. 56(e); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Adickes, 398 U.S. at 160.

Summary judgment is appropriate when, after adequate time for discovery, the non-moving party cannot establish an essential element on which it bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id; see also Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990).

In considering the motion, a court must construe the evidence and the inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Furthermore, facts asserted by the party opposing a summary judgment must be regarded as true if supported by affidavit or other evidentiary material. Coke v. General Adjustment Bureau, Inc., 640 F.2d 584, 595 (5th Cir. 1981) (quoting 10C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2727 at 524-30 (1973)).

IV.    LAW AND ANALYSIS

A.    THE ALLEGATIONS

In her Verified Complaint, Plaintiff alleges that Defendant terminated her "after she complained to human resources about sexual harassment and drug abuse in the

10

workplace."[6]   Complaint ¶ 3 (DE 1).   More specifically, Plaintiff alleges that she was terminated "in retaliation for complaining about illegal drug use by [Defendant's] employees who were involved in welding inside FPL electrical and nuclear plants" and "for complaining about illegal sexual harassment by [Defendant's] supervisors involving the sexual harassment of her daughter, Florence Robinson, by her immediate supervisor, David Laird."  Id. ¶¶ 18, 19.

## B.    THE FWA – PRIMA FACIE CASE AND BURDEN-SHIFTING

Plaintiff is proceeding under the Florida Whistleblower Act ("FWA"), more specifically, subsection 3 of the FWA.  See Fla. Stat. 448.102(3); see also Complaint ¶ 3 (DE 1); Plaintiff's Motion at 3 (DE 40-1) ("The dispute in this case surrounds subsection 3 of the FWA . . . .").  In pertinent part, the statute provides:

> An employer may not take any retaliatory personnel action against an employee because the employee has:  . . . (3) [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. 448.102(3).  To establish a prima facie case under the FWA, a plaintiff must make a three-part showing: "(1) that there was a statutorily protected expression; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action."  Pinder v. Bahamasair Holdings Ltd., Inc., 661 F. Supp. 2d 1348, 1351 (S.D. Fla. 2009) (citation omitted); accord Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000).

Once a plaintiff establishes a prima facie case, a defendant may rebut that prima

---

[6] Plaintiff complained to Human Resources on April 16, 2008.  Yet, some of the actions that Plaintiff alleges were retaliatory occurred prior. See discussion infra pp. 28-31.

facie case by proffering a legitimate, non-retaliatory reason for its action(s):

> In rebutting the plaintiff's prima facie case, a defendant
> employer must only produce credible evidence supporting its
> legitimate reasons. The employer does not bear the burden of
> persuasion. That burden remains with the plaintiff and is
> carried with evidence that the plaintiff's engagement in
> protected activity was a significant factor in the employer's
> decision.

Padron, 196 F. Supp. 2d at 1256 (quoting Bigge v. Albertsons, Inc., 894 F.2d 1497, 1501

(11th Cir. 1990)). The defendant's burden (in proffering a legitimate reason for the

adverse action) has been characterized as "low." Padron, 196 F. Supp. 2d at 1256. Once

a defendant satisfies its burden of articulating a legitimate, non-retaliatory reason for its

action(s), the presumption of retaliation is eliminated. Id.

"The burden then shifts back to the plaintiff to prove by a preponderance of the

evidence that the 'legitimate' reason is merely pretext for prohibited, retaliatory conduct."

Sierminski, 216 F.3d at 950. As the Padron court explained:

> The [p]laintiff must now present evidence, including the
> previously produced evidence establishing the prima facie
> case, sufficient to permit a reasonable jury to conclude that the
> reason given by the [d]efendant was not the real reason for the
> adverse employment action. The [p]laintiff must proffer
> sufficient evidence to create a genuine issue of material fact as
> to whether the [d]efendant's proffered reason is pretextual, or
> the defendant will be entitled to summary judgment.

Padron, 196 F. Supp. 2d at 1256-57 (citations omitted). Plaintiff must come forward with

"significant probative evidence of pretext, not mere conclusory allegations. Further, the

focus is on the employer's beliefs rather than the employee's own perceptions." Lockett

v. Choice Hotels Int'l, Inc., 315 Fed. Appx. 862, 868-69 (11th Cir. 2009) (internal citations

and quotations omitted).

## C. STATUTORILY PROTECTED EXPRESSION

To determine whether any of the violations of which Plaintiff complained rise to the level of a statutorily protected expression – the first element of the prima facie case – the Court must look to two related provisions of the FWA. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) (stating that "[w]here possible courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another") (emphasis in original). The first provision – the essence of the FWA – proscribes retaliatory action against an employee who objects to "any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3) (emphasis added). The second provision clarifies the first by defining "[l]aw, rule, or regulation" to "include[] any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4) (emphasis added). The Court, therefore, must examine whether the subject matter of the laws that were allegedly violated come within the scope of the FWA – "applicable to the employer and pertaining to the business" – and, if so, whether any of those violations constitutes an "activity, policy, or practice of the employer." Fla. Stat. §§ 448.101(4), 448.102(3).

### 1. "Applicable to the Employer and Pertaining to the Business"

#### a. The Caselaw

By defining "law, rule, or regulation" as a statute or ordinance that is "applicable to the employer and pertaining to the business," the Florida Legislature appears to have limited the scope of actionable violations. The limitation has drawn comment from a judge

13

of this Court: "The last phrase of the definition [of law, rule, or regulation] indicates that the conduct complained of must be in violation of a law, rule or regulation that is somehow more specifically applicable to the business, as opposed to the public at large." See Pinder v. Bahamasair Holdings Ltd., Inc., 661 F. Supp. 2d 1348, 1353 (S.D. Fla. 2009) (King, J.). To illustrate his point, the judge in Pinder contrasted the TSA regulations at issue in that case, which are "specifically applicable to airlines" and therefore covered by the statute, to "laws against theft, battery, threats, and sexual harassment," which are "generally applicable laws" and, therefore, not covered by the FWA. Id. (emphasis added). Referring to violations of such "generally applicable laws," the judge in Pinder concluded that "an employee could not state a claim under the FWA for reporting that type of behavior."[7] Id. The judge reasoned that "[t]he purpose of the FWA is not only to protect employees from unlawful termination, but to encourage employers to abide by the various regulations that govern them." Id. at 1351-52 (emphasis added).

But in distinguishing the FWA's treatment of laws that are "more specifically applicable to the business, as opposed to the public at large," Pinder did not address two pertinent decisions issued by Florida's intermediate appellate courts – Forrester v. John H. Phipps, Inc., 643 So. 2d 1109 (Fla. 1st DCA 1994), and Underwood v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 890 So. 2d 429 (Fla. 4th DCA 2004). In Forrester, the court rejected the argument that the FWA concerns violations of law "pertaining only to the business engaged in by the employer." 643 So. 2d at 1111 (emphasis added). By way of

---

[7] In her Motion, Plaintiff urged this Court to follow the Pinder decision. See Plaintiff's Motion at 3 (DE 40-1). During oral argument, however, Plaintiff appeared to recede from that position, asking this Court to reject Pinder's reading of the statute as unduly narrow.

a footnote, the Forrester court set forth its rationale for rejecting that argument: "Given the placement of commas in section 448.101(4), we view the phrase 'pertaining to the business' as modifying only a 'local statute or ordinance.'" Id. at 1111 n.2 (emphasis added).[8] Respectfully, this Court does not find either Forrester's rationale or its conclusion persuasive.

This Court is not aware of any grammatical reason to construe the two commas separating federal, state, and local to effectively read out of the statute the first two adjectives – "federal" and "state" – and to give meaning only to the third adjective – "local" – in the series of three. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) (stating that "[w]here possible courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another") (emphasis in original). Moreover, Forrester's construction of the statute would yield an illogical result – limited protection for reported violations of local law, yet broad protection for reported violations of state or federal law. Stated differently, Forrester would erect disparate standards, which standards would vary with the enacting forum. For instance, under Forrester, a reported violation of a law that is not specifically applicable to the business – such as a generally applicable narcotics statute – would fall within the protections of the FWA if the law were enacted by a federal or state legislative body, but would not fall within the protections of the FWA if such generally applicable law were

---

[8] For ease of analysis, the Court repeats the statutory provision at issue: "'Law, rule, or regulation' includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4). Accordingly, only two commas are found in the provision; one comma separates "federal" and "state," and the other comma separates "state" and "local."

enacted by a county or city legislative body. A statutory construction that would yield such an illogical result is flawed. See Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260 (Fla. 2008) (statutory provisions should not be construed in a manner that would lead to an illogical result). This Court, therefore, declines to adopt Forrester's reading of the statute.[9]

The second decision that is seemingly at odds with Pinder – Underwood v. Rhone-Poulenc Rorer Pharmaceuticals, Inc. – held that a plaintiff's "sexual harassment Whistleblower claim [based on an alleged violation of sections 760.10(1)(a) and (7) of the Florida Civil Rights Act] does state a cause of action, . . ." 890 So. 2d at 431 (emphasis added). Although Underwood did not expressly address the scope of the FWA or construe the language of § 448.101(4) (defining "[l]law, rule or regulation"), its holding that a sexual harassment complaint is actionable under the FWA is inconsistent with Pinder's assertion to the contrary. Significantly, however, Underwood is not inconsistent with a reading of § 448.101(4) that gives meaning to the phrase "applicable to the employer and pertaining to the business." In Underwood, the statutory basis for the sexual harassment complaint – Fla. Stat. § 760.10, "Unlawful employment practices" – is not a statute of general

---

[9] This Court recognizes that in the absence of a decision by the Florida Supreme Court it must generally follow a decision of a Florida intermediate appellate court when construing a Florida statute. Yet, this Court is mindful that it may decline to follow an intermediate appellate decision where there is a "persuasive indication" that the Florida Supreme Court would arrive at a contrary conclusion. See Galindo v. Ari Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000) ("Absent a decision by the highest state court or a persuasive indication that it would decide the issue differently, federal courts follow the decisions of intermediate appellate courts in applying state law.") (citing Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991)).  Here, the Court is persuaded that the Florida Supreme Court would decline to follow the decision of the First District Court of Appeal in Forrester as that decision is not consistent with the Florida Supreme Court's guidance on statutory construction and, further, is not grammatically or logically sound.

16

applicability, but a workplace-specific statute that proscribes certain workplace practices by an employer. Stated differently, the violation complained of in Underwood was of a statute that is "applicable to the employer and pertaining to the business."

        b.    The Violations of Which Plaintiff Complained

According to the Complaint, Plaintiff voiced her objections to the following: "David Laird being sexually involved with a subordinate, Florence Roberson; Laird and other employees doing drugs on the job; and that Plaintiff was ordered to urinate in a cup in order to provide clean urine to falsify drug tests for Laird and other employees who were doing drugs." Complaint ¶ 10 (DE 1). Plaintiff further alleges that her termination resulted from her "complaining about illegal sexual harassment in violation of F.S. 760 and illegal drug use in the workplace." Complaint ¶ 24 (DE 1). Hence, the Complaint lists three objections but identifies a statutory basis (Fla. Stat. § 760) for only one objection, the alleged sexual harassment. Because Fla. Stat. § 760 is a workplace statute that pertains to the business, it is therefore actionable under the FWA. The Complaint, however, does not identify any statutory basis for the remaining two objections – the alleged drug use and testing irregularities. And absent any identifiable "law, rule, or regulation," the violation of which Plaintiff reported, her objections concerning those violations are not actionable.

But even if the Court were to go beyond the pleadings in search of a "law, rule, or regulation" that might form the basis for Plaintiff's remaining two objections, she cannot prevail. Defendant's Motion notes that elsewhere in this litigation – not in the Complaint – Plaintiff cited to Chapter 893 of the Florida Statutes, the "Florida Comprehensive Drug Abuse Prevention and Control Act," as the statutory basis for her objections to the drug use. Defendant's Motion at 5 (DE 44). Yet, those narcotics statutes are laws of general

17

applicability and, as Plaintiff acknowledges, "the criminal law against drug use and distribution was not specifically designed to regulate the Defendant." Plaintiff's Reply at 12 (DE 62).[10]

To support her complaints concerning testing irregularities, Plaintiff's discovery responses – again, not her Complaint – suggest that these irregularities violated the following: Defendant's policies and procedures, the False Claims Act (31 U.S.C. § 3730(h)), and the Energy Reorganization Act of 1974 (42 U.S.C. § 5851). See Defendant's Motion at 6 (DE 44). An employer's policies and procedures, however, do not come within the scope of protections provided by the FWA. See Lawson v. Dollar General Corp., No. 8:04-CV-2366-T-17TBM, 2006 WL 1980277, at *3 (M.D. Fla. July 12, 2006) (holding that company policies do not constitute a law, rule, or regulation). Further, the subsection of the False Claims Act identified by Plaintiff protects an employee from retaliation for taking "efforts to stop [one] or more violations of this subchapter." 31 U.S.C. § 3730(h). Yet, Plaintiff has not identified any portion of the False Claims Act that was implicated by her complaints of drug testing irregularities; nor can she show that Defendant violated the False Claims Act. Finally, Plaintiff claims that her complaints implicated

_____

[10] Plaintiff's Motion (DE 40-1) alleges that she also reported to Defendant's Human Resources personnel that Laird was stealing copper tubing and selling it for cash. Like the alleged drug use, the alleged theft of copper tubing would be in violation of a law of general applicability and, therefore, would not come within the purview of the FWA. And even if the reporting of such theft were covered by the FWA, Plaintiff cannot argue that the theft was an act of the employer or of an employee in furtherance of his employment; nor can she argue that the employer ratified the alleged theft. See Sussan v. Nova Se. Univ., 723 So. 2d 933, 934 (4th DCA 1999) (holding that plaintiff's allegation that he reported to supervisor alleged theft by co-employees was insufficient to state cause of action under the FWA; the plaintiff had not objected to an illegal activity that could be attributed to the employer, to an employee acting within the legitimate scope of his employment, or to an employee whose illegal conduct was ratified by the employer).

violations of the anti-retaliation provision of the Energy Reorganization Act of 1974, which protects employees from complaining about violations of the Act or the Atomic Energy Act of 1954. See 42 U.S.C. § 5851. Yet, Plaintiff has not cited any portion of either Act of which she complained or which she believes that Defendant violated. And given that the Port Everglades job did not involve either nuclear or atomic energy, see Laird Decl. ¶ 3, Plaintiff is unable to do so.

In sum, to satisfy the first prong of the prima facie case, Plaintiff must establish that her complaints of sexual harassment, drug use, and testing irregularities are actionable under the FWA by showing that they are violations of laws more specifically applicable to Defendant's business, as opposed to the public at large. See Fla. Stat. § 448.101(4); see also Pinder, 661 F. Supp. 2d at 1353. To the extent her complaints are based upon alleged sexual harassment in violation of § 760 of the Florida Statutes, governing workplace discrimination, they come within the purview of and qualify for the protections provided by the FWA. See Underwood, 890 So. 2d at 431. To the extent Plaintiff's complaints are based upon narcotics violations – Chapter 893 of the Florida Statutes – they are based on laws of general applicability and do not come within the purview of or qualify for the protections provided by the FWA. Nor do Plaintiff's objections to the drug testing irregularities qualify for the protections of the FWA; she has not identified any provision of the False Claims Act or the Energy Reorganization Act, the violation of which forms the basis of her complaints.

2.    "Activity, Policy, or Practice of the Employer"

Even if all the alleged violations – sexual harassment, drug use, and testing irregularities – were of laws that were "applicable to the employer and pertaining to the

19

business," Plaintiff must further show that the activity, policy, or practice to which she objected was "of the employer." Fla. Stat. §§ 448.101(4), 448.102(3). To satisfy that requirement, Plaintiff may show that the objected-to activity was undertaken by the employer; alternatively, she may show that the activity was undertaken by an employee, provided he was acting within the legitimate scope of his employment or his acts were ratified by the employer. See McIntyre v. Delhaize Am., Inc., No. 8:07-CV-2370-T-30TBM, 2009 WL 1039557, at *3 (M.D. Fla. April 17, 2009) (citing Sussan, 723 So. 2d at 934). Here, the Complaint does not specify who committed the alleged acts to which Plaintiff objected – the employer, an employee acting within the scope of his employment, or an employee whose acts were ratified by the employer. However, because Defendant is a corporation, and because "[a] corporation can only act through its employees," Defendant "can only [have] violated [the law] through the actions of its employees." Pinder, 661 F. Supp. 2d at 1352. "Under Florida law, an employee acts within the scope of his employment 'if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master.'" Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992) (quoting Kane Furniture Corp. v. Miranda, 506 So. 2d 1061, 1067 (Fla. 2d DCA 1987)). Here, Plaintiff cannot show that the activity, policy, or practice to which she objected was "of the employer" or, more particularly, that it was undertaken by an employee acting within the scope of his employment or by an employee whose acts were ratified by Defendant.

### a. Drug Use

In her deposition, Plaintiff alleges that she complained to Laird about drug use by Roberson and that she complained to Ivey about drug use by Laird and Roberson,

20

although she did not witness or report any drug use on the job. Because Defendant is a corporation, Plaintiff cannot argue that the drug use was committed by the employer. Nor can she persuasively argue that the alleged drug usage – whether on or off the job – was of employees acting within the legitimate scope of their employment. None of the employees were hired to use drugs, and their alleged drug usage was not in any way activated by a purpose to serve the employer. Nor can Plaintiff plausibly argue that the employer in any way ratified the drug usage. When Plaintiff reported the drug usage to Defendant's Human Resources Department, the company initiated random drug tests of the employees; the tests yielded negative results.

                b.     Drug Testing Irregularities

Plaintiff also claims that she complained about the drug testing irregularities at Defendant's Port Everglades facility. According to the Complaint, "Plaintiff was ordered to urinate in a cup in order to provide clean urine to falsify drug tests for Laird and other employees who were doing drugs." Complaint ¶ 10 (DE 1). The record shows that it was Plaintiff's own daughter, Roberson, an employee with no supervisory authority over Plaintiff, that had allegedly requested the urine sample from Plaintiff. Again, Plaintiff cannot argue that the objected-to activity was an act of her corporate employer. Furthermore, she cannot persuasively argue that the employee who allegedly ordered her to provide the urine sample, Roberson, was acting within the legitimate scope of her employment. Ordering Plaintiff to assist in falsifying a drug test is not the kind of activity that Roberson was hired to perform; nor was Roberson activated by a purpose to serve the employer. Nor can Plaintiff persuasively argue that the employer ratified the attempts to falsify the tests that the employer itself was administering.

c.   Sexual Harassment

Plaintiff's third complaint concerned the alleged sexual harassment of her daughter, Roberson. As to this complaint, however, the record is such that the Court is constrained to first address the substance of the allegation, before addressing whether the activity can be imputed to the employer. Here, taking the evidence in the light most favorable to Plaintiff, no reasonable jury could find an actual violation of the laws proscribing sexual harassment.[11]

In her interrogatories, Plaintiff claims that she complained that Roberson (her married daughter) was living with Laird (her married supervisor), that Laird was forcing her daughter to do drugs, and that Roberson and Laird were having sex outside her daughter's marriage. See Defendant's Motion at 6 (DE 44). Plaintiff does not identify the individual to whom she initially made these complaints or when she made them. What is clear is that on April 16, 2008, Plaintiff told Leonard Wallace of Defendant's Human Resources Department that "David Laird dates her daughter Fay Roberson" and "Fay told [Plaintiff]

_____

[11] Plaintiff argues that she had a "good faith" belief that Roberson had been sexually harassed. However, the language of the FWA has been construed to require that a plaintiff be able to prove an "actual violation" of law by the employer – not merely prove that she held a "good faith belief" that such violation occurred. See Smith v. Psychiatric Solutions, Inc., No. 09-12233, 2009 WL 4897739, at *2 (11th Cir. Dec. 21, 2009) (unpublished) ("[W]e conclude from the record that the district court correctly applied the actual violation standard as opposed to the good faith belief standard."); White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1337 (M.D. Fla. 2005) ("Here, the plain language of Fla. Stat. § 448.102(3) states that a Plaintiff . . . must prove that the activity, policy or practice objected to is, in fact, in violation of a law, rule or regulation. As the provided emphasis on the word 'is' makes clear, no qualification was provided to permit shelter for the employee who reasonably believes she is being asked to engage in illegal activity. Had the legislature intended such protection, the legislature could have included such language in the statute as it has shown itself capable in the past.") (italics in original). Yet, even if the standard were otherwise, this Court finds that (on this record) Plaintiff could not establish that she held a reasonable good faith belief that Roberson was being sexually harassed.

22

that she sleeps with David and it is no one else's business." Plaintiff's Depo. 158:3 -

161:14. In her Complaint, Plaintiff alleges that this was a "violation of F. S. 760."

Complaint ¶ 24 (DE 1).[12]

The Plaintiff's complaint to Wallace, however, did not amount to one of sexual

harassment; Plaintiff did not allege, or even suggest, that Roberson had in any way been

pressured to become sexually involved with Laird. And even if Plaintiff had actually voiced

a sexual harassment complaint, she cannot prove an actual violation of the laws

proscribing workplace sexual harassment,[13] let alone a violation that could be imputed to

Defendant. Although Plaintiff may have disapproved of her daughter's (Roberson's)

relationship with Laird, Roberson clearly valued the relationship; she described Laird as

her "lover." Roberson Depo. 6:18-7:21 and 37:11-17. And although the couple had their

disagreements – particularly as concerned Laird's attempts to meet other women and

_____

[12] In response to Defendant's discovery requests, Plaintiff added statutory violations that go beyond the sexual harassment alleged in the Complaint. In her discovery responses, Plaintiff claims that the relationship between her daughter and Laird was also in violation of Florida Statute § 798.01 (prohibiting living in an open state of adultery), Florida Statute § 798.02 (prohibiting lewd and lascivious behavior), and Florida Statute § 794.11(4)(c),(d) (prohibiting sexual battery by threat or administration of drugs or alcohol). See Defendant's Motion at 7 (DE 44). In addition to not being violations that pertain to the business, the alleged adultery and sexual battery were not committed by and cannot be imputed to the employer. See Ruiz v. Aerorep Group Corp., 941 So. 2d 505, 507 (Fla. 3d DCA 2006) (holding that alleged battery by employee was not a violation of law, rule or regulation by employer).

[13] To establish a gender-based hostile work environment claim based on supervisor harassment, a plaintiff-employee must show: (1) that the employee belongs to a protected group; (2) that the employee has been subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (emphasis added).

23

Roberson's concern that she might contract a sexually transmitted disease as a result –

in no sense was their relationship unwelcomed by Roberson, such that it would run afoul

of either Title VII or the FCRA.[14]

Yet, even if the facts were completely otherwise – that is, even if Roberson had not

welcomed the relationship with Laird – the violation of law here could not be imputed to the

employer.[15]   The   record   contains   no   allegation   of   any   tangible

---

[14] Roberson (Plaintiff's daughter) testified that she voluntarily entered into a sexual relationship with Laird.  Roberson Depo. 6:18-7:21 and 37:11-17.  And although Plaintiff has suggested that Laird threatened Roberson's job, Roberson testified only that Laird once told her that "if you want to keep your job, you need to do your job."  Roberson Depo. 37:21-38:12.  According to Roberson, following that incident, she and Laird "discussed everything and got back together."  Roberson Depo. 39:5-8.  Roberson explained that she and Laird began experiencing problems in their relationship when she discovered that Laird was talking to women he had met on an internet dating site: "[t]his is what our problem was, and I got sick and tired.  I don't want any kind of disease."  Roberson Depo. 39: 9-40:16.  Roberson also testified that when she and Laird were having problems, he would be unpleasant to everyone on the job site, not just her.  Roberson Depo. 41:11-42:15.  See Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001) (holding that alleged harassment was not actionable inasmuch as action was taken because of his disappointment in their failed relationship; such an action is not taken "because of sex"); Succar v. Dade County Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000) (holding that unpleasant treatment by supervisor to subordinate was not sexual harassment but rather a response to the individual because of her former intimate place in that individual's life).

[15]  The Supreme Court has held that "an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim."  Faragher v. City of Boca Raton, 524 U.S. 775, 780 (1998).  More specifically, the Faragher Court held:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.  When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.  See Fed. Rule Civ. Proc. 8(c).

Id. at 807.

employment action against Roberson, and (as of Plaintiff's discussion with Wallace) Roberson had not voiced any complaint to Defendant, let alone to its Human Resources Department. To the contrary, Roberson appeared to deeply resent her mother's (Plaintiff's) attempts to interfere in the relationship, and (as Plaintiff herself told Defendant's Human Resources Department) Roberson had made clear that her relationship with Laird was not anybody else's business. Nor can any allegedly harassing conduct be attributed to an employee acting within the legitimate scope of employment. Neither Roberson nor Laird was employed for the purpose of engaging in this relationship and, in doing so, neither was motivated by a desire to serve the employer. Nor can Plaintiff persuasively argue that Defendant somehow ratified the conduct because it did not compel Laird and Roberson to terminate the relationship; Plaintiff did not present Defendant with any information suggesting that the relationship was an unwelcomed one.

---

Describing this affirmative defense, the Court stated:

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Id. at 807-808.

25

In sum, because the activities about which Plaintiff complained – drug use, testing irregularities, and sexual harassment – cannot be deemed to be "of the employer," they do not come within the scope of the FWA. Yet, even if Plaintiff were able to satisfy the first element of her prima facie case – that is, even if all of her expressions were statutorily protected – she cannot satisfy the remaining elements of her prima facie case; nor can Plaintiff show that Defendant's proffered reasons for its actions were pretextual.

### D.     ADVERSE EMPLOYMENT ACTION, CAUSATION, AND JUSTIFICATION

The Complaint alleges that Plaintiff was terminated after complaining to Leonard Wallace of Defendant's Human Resources Department about drug use, testing irregularities, and sexual harassment. According to the Complaint, Plaintiff "was sent home to Georgia by [Defendant] so that Laird could get her daughter Florence Roberson under control" and was told that "she would be returning to work in three days." Complaint ¶¶ 11, 12 (DE 1). However, she "was immediately replaced by a substantially younger employee" and "not allowed to return to work in three days as promised." Id. ¶¶ 13, 14. She also "was told she would be returning to work April 26, 2008," but "was later told that the night shift had been cancelled and that she would not be returning to work April 26, 2008." Id. ¶¶ 15, 16. Indeed, Plaintiff alleges that she "was never allowed to return to work for [Defendant]." Id. ¶ 17. Plaintiff submits that her termination was "in retaliation for complaining about illegal drugs use" and "about illegal sexual harassment." Id. ¶¶ 18, 19.

Assuming, arguendo, that Plaintiff has satisfied the first prong of her prima facie case by showing that her complaints were "statutorily protected expressions," to satisfy the second prong Plaintiff must establish that she suffered an "adverse employment action." Pinder, 661 F. Supp. 2d at 1351; accord Sierminski, 216 F.3d at 950. To do so, she must

26

show that the action she suffered was materially adverse and of a type that would dissuade a reasonable employee from engaging in statutorily protected activity. Luna v. Walgreen Co., 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008). If a plaintiff can establish that she was subjected to an adverse employment action, she must then satisfy the third prong of the prima facie case by establishing a "causal link" between the statutorily protected expression and the adverse action. To establish this causal connection, a plaintiff must show that the decisionmaker knew of the protected expression and that the protected expression and the adverse action were not wholly unrelated. See Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1119 (11th Cir. 2001). If the plaintiff is able to establish a prima facie case, thereby raising the inference that the protected activity was the likely reason for the adverse action, she effectively shifts to the employer "the burden of production . . . to articulate a legitimate, non-retaliatory reason for the adverse action." United States ex rel Vargas v. Lackman Food Service, Inc., 510 F. Supp. 2d 957, 968 (M.D. Fla. 2007) (citing Sierminski, 216 F.3d at 950). And if the employer is able to satisfy its burden of articulating a legitimate reason, it shifts back to the plaintiff "[t]he burden . . . to prove by a preponderance of the evidence that the 'legitimate' reason is merely pretext for prohibited, retaliatory conduct." Sierminski, 216 F.3d at 950.

Here, Plaintiff has identified four adverse actions to which she was subjected: (1) being sent home on March 30, 2008; (2) not being brought back in "a couple of days"; (3) not being recalled to work in late April 2008; (4) not being re-hired by Defendant after April 2008. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that each of these four actions would constitute an adverse employment action. But the Court further finds that Plaintiff cannot show that any of these actions were caused by her having

27

engaged in protected activity or that Defendant's proffered reasons for the actions were pretextual.

                1.     Being Sent Home on March 30, 2008

Plaintiff alleges that she was sent home on March 30, 2008, so that Laird "could get Fay [Roberson] under control." Complaint ¶ 11 (DE 1). First, the Court notes that the Complaint alleges that Plaintiff was unlawfully terminated "after she complained to human resources about sexual harassment and drug abuse in the workplace." Complaint ¶ 3 (DE 1). But Plaintiff did not lodge her complaints with Defendant's Human Resources Department until April 16. Accordingly, Plaintiff's being sent home on March 30 could not have been in retaliation for her "complain[ing] to human resources about sexual harassment and drug abuse in the workplace." Id. But even if the Court were to disregard Plaintiff's own pleadings, she cannot prevail.

Prior to Plaintiff's returning home on March 30, the only arguable objections voiced by Plaintiff were her internal objections concerning the off-site drug use and her resistance to her daughter's (Roberson's) solicitation of a urine sample. As neither of these complaints involved violations of law pertaining to the business, they are not covered by the FWA, and Plaintiff, therefore, cannot establish a prima facie case of retaliation.

Yet, even Plaintiff's internal objections to off-site drug use and the solicitation of the urine sample were covered by the FWA, Plaintiff cannot show that she was sent home on March 30 for having lodged a complaint. According to Plaintiff's own testimony, she was sent home because Laird was obsessed with Roberson and wanted her all to himself. Plaintiff's Depo.178:21-179:19. Ivey testified that when he met with Plaintiff that day, following her argument with her daughter, Plaintiff was upset, and he believes that Plaintiff

asked to go home. Ivey Depo. 42:7-43:4. But even if Laird were responsible for directing that Plaintiff go home because she was upset and because Roberson was out of control, these are legitimate, non-retaliatory reasons for the action. Furthermore, Plaintiff did not prove that such reasons were pretextual; she did not offer evidence that discredited these reasons or that shows that the reasons were unlikely and/or unworthy of credence. Indeed, in her deposition, Plaintiff acknowledged that she had been very upset, that she had agreed to go home, and that she had thought this was a good idea. Plaintiff's Depo. 131:18-132:6. Whether or not Defendant's alleged decision (to send her home) was wise or prudent is of no consequence; Plaintiff cannot show that the decision was in retaliation for her having lodged any protected complaint.[16]

### 2.    Not Being Brought Back in a Couple of Days

The second adverse action alleged by Plaintiff is that she was supposed to return to the job site in a "couple of days" but that Defendant told her not to do so. Again, the Court notes that the Complaint alleges that Plaintiff was unlawfully terminated "after she complained to human resources about sexual harassment and drug abuse in the workplace." Complaint ¶ 3 (DE 1). But Plaintiff did not lodge her complaints with Defendant's Human Resources Department until April 16. Hence, Defendant's decision not to bring Plaintiff back to work in a "couple of days" after her March 30 departure could not have been in retaliation for her "complain[ing] to human resources about sexual

---

[16] That Defendant classified Plaintiff's March 30 departure on its paperwork as a "layoff" does not establish pretext. As the evidence established, it is common in the industry to classify an employee's departure, even a voluntary one, as a "layoff." Laird Decl. ¶ 11; Ratliff Depo. 20:7-24. If anything, Defendant's classifying Plaintiff's departure as a "layoff" would indicate that she is eligible for immediate re-hire and would rebut Plaintiff's allegation that she was "terminated."

harassment and drug abuse in the workplace." Id. And, again, even if the Court were to disregard Plaintiff's own pleadings, she cannot prevail.

Plaintiff had planned to return to Port Everglades on or before April 3, 2008. But as of that date, the only objections that Plaintiff had voiced were to her own daughter's drug usage and solicitation of the urine sample, which objections are not statutorily protected expressions. Yet, even were the objections protected by the FWA, Plaintiff still cannot establish that she was not returned to the job because she lodged a complaint. Rather, the reason she was not returned to the job was because the outage on which she had been working ended during the first week of April and, therefore, her assignment was over. Laird Decl. ¶¶ 11, 12. Stated differently, even if Plaintiff had never returned home on March 30, the job on which she was working would have ended days later, and she would have had a few weeks off until the April 28 outage on which she was next scheduled to work. Laird Decl. ¶¶ 12,13. Defendant, therefore, had a legitimate reason for not bringing her back in a few days: the outage had ended and her assignment was over. Laird Decl. ¶¶ 11,12.

Plaintiff counters that Defendant's proffered reason for not bringing her back is pretextual and not worthy of belief, as Defendant brought Barbara Davis to the job site within a day or two of Plaintiff's departure. To establish pretext, however, Plaintiff must "present concrete evidence in the form of specific facts" showing that Defendant's proffered reasons for the employment action are merely pretextual; Plaintiff's beliefs and suspicions do not suffice. Early, 907 F.2d at 1081; see also Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1073 -74(11th Cir. 1995) (holding that plaintiff's unsupported allegations not enough to prove pretext). Here, Plaintiff has not shown that Defendant's

proffered reason for not bring her back to the job in a couple of days was pretext for retaliation. The evidence shows that Davis was brought to the job site to begin ordering equipment and to otherwise prepare for the outage set to begin on April 28. Laird Decl. ¶ 14. Hence, although Davis was working at the same job site as Plaintiff, she was not working on the same outage as Plaintiff had been working. Id. Indeed, Davis, who is a long-time employee of Defendant, had been scheduled several weeks earlier to work the April 28 outage. Laird Decl. ¶ 13. Davis had been working for Defendant at another plant, and Defendant planned for her to come to Port Everglades when her assignment at that other plant ended. Id. Defendant's plans for Davis had nothing to do with Plaintiff.

In sum, Plaintiff cannot establish that Defendant's decision not to bring her back in a couple of days following her March 30 departure was taken in retaliation for her engaging in any protected expression, let alone for her having complained to Defendant's Human Resources Department, as she alleged in the Complaint.

### 3. Not Being Recalled to Work in Late April 2008

The third adverse action alleged by Plaintiff is Defendant's failure to re-call her to work the night shift for the April 28 outage, as originally scheduled. Plaintiff characterizes this decision as retaliatory for her having lodged complaints. Unlike the first two alleged adverse actions, by the time of this action, Plaintiff had informed Leonard Wallace of Defendant's Human Resources Department (on April 16) of the relationship between Roberson and Laird, of the drug testing irregularities, and of the drug use by employees. Yet, Plaintiff cannot show that the individual who decided not to bring her back for the April 28 outage – in this case, David Laird – knew of the content of her complaints to Wallace. See Brungart v. Bellsouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (plaintiff

31

cannot create a genuine issue of material fact about the causation element if the decisionmaker did not know of the employee's protected conduct). The record is devoid of evidence showing that Laird knew what Plaintiff had told Wallace. Laird Decl. ¶ 22; Wallace Depo. 54:9-17. Indeed, the opposite is the case. Wallace and Lively were both emphatic that they did not disclose the content of Plaintiff's complaints to Laird. Wallace Depo. 54:9-17; Lively Decl. ¶¶ 6,7. Absent evidence that Laird knew what Plaintiff had told Wallace, Plaintiff cannot establish the causation element of her prima facie case.

Moreover, even were Plaintiff able to establish a prima facie case as to Defendant's decision not to bring her back for the April 28 outage, Defendant has come forward with a legitimate, non-retaliatory reason for its decision: the outage was reduced by FPL, and the night shift (on which Plaintiff was intended to work) was therefore canceled. Laird Decl. ¶ 16. Furthermore, Plaintiff is without any evidence of pretext; she cannot show that Defendant's proffered reason is untrue or unworthy of credence. Indeed, Plaintiff acknowledged that she does not know if the night shift had been canceled, and she acknowledged that it is common for the scope of outages to change and for assignments to alter. Plaintiff's Depo. 171:7-172:12 and 241:14-17. Plaintiff's allegation that she was not brought back for the night shift because she had complained to Wallace is merely speculation and, thus, insufficient to create a genuine issue that would preclude summary judgment. See Aldaldolan v. Festive Pizza, Ltd., 380 F. Supp. 2d 1345, 1353-54 (S.D. Fla. 2005) (mere belief, speculation, or conclusory allegations not enough to withstand summary judgment).

Nor can Plaintiff persuasively argue that Defendant in some way retaliated by not placing her on the day shift instead; Defendant was under no obligation to create a position

for Plaintiff. The day shift tool room position had been filled by Barbara Davis – an employee of more than 10 years, contrasted with Plaintiff's 7 weeks – who had previously run the tool room on numerous large outages. Laird Decl. ¶ 13. Defendant had hired Davis for the day shift on this outage several weeks earlier, long before Plaintiff complained to Wallace, and Davis had started to organize and place orders for the tool room as soon as she completed her assignment at another site. Laird Decl. ¶ 14. The decision to place Davis, rather than Plaintiff, on the tool room day shift was legitimately based on the qualifications of the two individuals and cannot be shown to have been made in retaliation for Plaintiff's complaints. Although Plaintiff may have believed that she was more qualified than Davis, her subjective beliefs are not relevant. Lockett, 315 Fed. Appx. at 868-69 ("the focus is on the employer's beliefs rather than the employee's own perceptions"). Because Plaintiff is without evidence to rebut Defendant's proffered reason for not bringing her back for the April 28 outage, she cannot show that its reason is pretextual.

### 4.     Not Being Hired by Defendant After April 2008

The final adverse action alleged by Plaintiff is that she was not rehired by Defendant after April 2008. Once again, the Court notes that Plaintiff has not established a prima facie case. She cannot establish that her expressions were statutorily protected; nor can she establish the causal link (between the expression and the adverse action) necessary for a showing of retaliation. But even Plaintiff were able to satisfy her prima facie case, Defendant's proffered reason for not bringing her back after April 2008 is a legitimate one: Plaintiff did not follow proper procedures to apply for a position after April 2008. Indeed, Plaintiff has acknowledged that she never called anyone at Defendant's offices after April 2008 to inquire about a position with Defendant. Plaintiff's Depo. 200:1-21 and 246:12-

247:3.[17] Nor did Plaintiff even speak to Roberson or Ivey about a job after April 2008.

Plaintiff's Depo. 244:9-13 and 246:22-247:3. Yet, even if she had requested to be re-hired,

Plaintiff has not identified a single open position – in the tool room or elsewhere – that

Defendant filled after April 2008, but for which she should have been considered.[18]

In sum, Plaintiff has no evidence showing that Defendant's failure to rehire her after

April 2008 was retaliatory, nor does she have evidence showing that Defendant's reasons

for not re-hiring her were pretextual.

## V.    CONCLUSION

Plaintiff cannot withstand the grant of summary judgment as she is unable to

establish a genuine issue of material fact. First, Plaintiff cannot establish a prima facie

case. She cannot show that her complaints were statutorily protected expressions; of her

---

[17] In her Statement of Facts, Plaintiff cites to Wallace's deposition to assert that on September 19, 2008, she called Wallace to ask for her job back. Plaintiff's Statement of Facts, ¶ 96. But a review of that deposition shows that in referring to the September 19, 2008 telephone call, Wallace actually testified that he does not recall Plaintiff saying she wanted to be returned to work or asking why she had not been returned to work. Wallace Depo. 104:5-24. More importantly, in her deposition, Plaintiff herself testified that she did not contact anyone at the Defendant company after April 23, 2008. Plaintiff's Depo. 200:1-21 and 246:12-247:3.

In addition, Plaintiff asserts that her attorney contacted Defendant in October 2008 to request that she be returned to work. Plaintiff's Depo. 244:25-245:9. This communication, however, was in the form of a demand letter from Plaintiff's counsel seeking a settlement, which would have included re-employment. A settlement demand letter from Plaintiff's counsel not only fails to qualify as an application for a position, but is inadmissible hearsay that cannot be reduced to admissible form for use as evidence in the case. See First Specialty, Inc. Corp. V. GRS Mgmt. Assoc., Inc., No. 08-81356-CIV, 2009 WL 2524613, at *4 (S.D. Fla. Aug. 17. 2009) (discussing that demand letters seeking to settle claims not admissible).

[18] Again, to the extent Plaintiff suggests that she should have been considered for any position filled by Davis, her claim fails because Plaintiff cannot show that she is more qualified than Davis or otherwise show pretext. Laird Decl. ¶¶ 13, 18, 21.

three complaints, two do not pertain to the business and, perhaps more importantly, none can be imputed to the employer. Yet, even if her complaints rose to the level of statutorily protected expressions, Plaintiff cannot show that any of Defendant's actions were taken in retaliation for her having voiced those complaints. Second, even were Plaintiff able to establish a prima facie case, Defendant has proffered legitimate, non-retaliatory reasons for its actions, which reasons Plaintiff has not shown to be pretextual.

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (DE 40-1) is DENIED, that Defendant's Motion for Summary Judgment (DE 44) is GRANTED, and that the action is hereby DISMISSED. The Court will enter separately a final summary judgment in favor of Defendant.

DONE AND ORDERED at Fort Lauderdale this 24th day of May 2010.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Randy A. Fleischer, Esq.
Counsel for Plaintiff Virginia Little

Angelique Groza Lyons, Esq.
Counsel for Defendant Foster Wheeler Constructors, Inc.